MARVIN, Judge.
The plaintiff, a manufacturer of plastic products in Monroe, sought to enjoin the City from carrying out an industrial inducement plan which would provide a competitor with a manufacturing plant on public property. The City’s exception of no cause of action was sustained and plaintiff’s demands were rejected. On plaintiff’s appeal, we affirm the result for reasons different than stated by the trial court.
Plaintiff is a Michigan corporation with its principal place of business in Monroe. Plaintiff’s president resigned his position with plaintiff in 1978 and, with others, created a corporation (Sunbelt Manufacturing, Inc.) to directly compete with plaintiff. Sunbelt and the City began negotiating in 1979 to utilize Louisiana’s industrial inducement statutes to permanently finance the construction and lease to Sunbelt of a manufacturing plant in the Monroe Industrial Park. See Art. 6, § 21, La. Constitution.
The City apparently sometimes attempted to combine and to fulfill in one advertisement and in one ordinance, the often distinct requirements of two or more inducement statutes. See and compare LRS 33:4717.2 and LRS 39:991 et seq.
LRS 33:4717.2 authorizes a municipality to lease for industrial inducement purposes a plant site for a consideration which may include the potential value of the economic impact the induced enterprise would have on the community.
LRS 39:991 et seq. authorizes a municipality to issue bonds to finance the construction and the lease of plant sites to induced enterprises.
The City’s attempt to combine the requirements of two statutes generated many issues from each litigant.[1] In this appeal, plaintiff attacks only the lease proposal and does not attack the bonding procedures. The attacks on the lease generally concern the legal effect of the plaintiff’s starting the construction of its plant in the industrial park (financed by private interim loans) before the proper procedures were followed to authorize the City to lease the property. The essence of the issues raised by the litigants is whether or not the City followed the proper procedure to authorize execution of the lease.
LRS 33:4717.2(A) requires that a municipality publish a notice of its intent to lease public property once a week for two consecutive weeks beginning at least 14 days from the date “such action is contem *899 plated.”[2] This notice “. . . shall include the following:”
“(1) a general description of the proposed transfer,
“(2) a description of the property to be transferred,
“(3) the proposed consideration to be given in exchange for said property,
“(4) a statement that the proposed contract is on file for public inspection in the office of the political subdivision,
“(5) a statement as to the appraised value of such property as determined by a real estate appraisal made within the previous twelve months,
“(6) a date, time, and place at which objections to such transfer will be received. Should five percent of the resident electors of the political subdivision object to said proposed transaction, an election shall be held for the purpose of submitting the question of the transfer to the voters in accordance with Chapter 6 of Title 18 of the Louisiana Revised Statutes of 1950.”
Part (B) of this statute reads:
“B. The resolution or ordinance adopted by the governing authority authorizing any transfer of property of the political subdivision shall set forth, in a general way, the terms of the authorized transfer and that the contract is on file for public inspection in the office of the political subdivision. At the regularly scheduled meeting immediately prior to the meeting at which the resolution will be considered, the governing authority of the political subdivision shall announce to those persons present that the resolution will be considered at the next meeting. Such resolution or ordinance shall be published as soon as possible after adoption in one issue of the official journal of the political subdivision. For a period of thirty days from the date of publication of any such resolution or ordinance, any interested person may contest the legality of such resolution or ordinance or the validity of the authorized transfer, after which time, no one shall have any cause of action to contest the legality of the transfer for any cause whatsoever, and it shall be conclusively presumed thereafter that every legal requirement has been complied with, and no court shall have authority to inquire into such matters after the lapse of said thirty days.” Emphasis supplied.
On August 17, and 24, 1979, this notice was published in the Monroe News-Star, Monroe’s daily newspaper:
“NOTICE OF INTENTION TO LEASE PROPERTY IN MONROE INDUSTRIAL PARK
“The City . . . hereby gives notice pursuant to the provisions of [LRS 33:4717.2] of its intention to lease 8.75 acres of land to Sunbelt . . . for the purpose of constructing a manufacturing plant . . . The property to be leased is . described as * *
“Upon its completion, Sunbelt will convey the . . . project ... to the City. The City will then lease the project to Sunbelt for an amount sufficient to repay . . . $2,700,000 . of revenue bonds which will be issued by the City pursuant to [LRS 39:991-1001] In addition Sunbelt will pay

“The term of the lease shall be * *
“The proposed lease and all documents . - . . are . . . open to public inspection at the office ... of the Secretary-Treasurer of the City .
“An appraisal of the leased land . made during the preceding 12 months . reflects that it has a value of . $3,150 . . . per acre.
“Notice is further given that the Commission Council of the City *900 will meet in open and public session . at 10 o’clock a.m. on the 11th day of September, 1979. At such time any and all objections to the proposed lease to Sunbelt will be heard and considered.
“By order of . the City, this 14th day of August, 1979.”
A hearing was held on September 11, 1979, to receive objections and the City then enacted on that date a resolution authorizing the execution of the lease.[3] This September resolution refers to Ordinance No. 7080 which was enacted by the City on August 14, 1979.
Ordinance 7080, which was published on August 21, 1979, is a lengthy document (five newspaper pages of legal type size) because its provisions also relate to the issuance, security, and sale of the industrial inducement bonds. Ordinance 7080, which purports to authorize the City to execute the lease with Sunbelt, authorizes and directs publication of the notice about details of the lease and the hearing for objections, all as required by LRS 33:4717.2. Ordinance 7080 obviously attempts to combine the procedures for authorizing the bonds with the procedures for authorizing the lease. The notice about the lease contained in Ordinance 7080 is identical to the notice quoted above. Ordinance 7080 was published on August 21, 1979.[4] The notice quoted above was published twice, once on August 17 and again on August 24, 1979. Thus the notice required by LRS 33:4717.2 was published three times, the earliest of which was August 17, 1979, more than 14 days from the date of the enactment of the resolution authorizing the City to execute the lease.
LRS 33:4717.2(B) sets forth a 30-day delay, after the expiration of which, no attack *901 can be made upon the resolution or ordinance authorizing execution of the lease or upon the validity of the lease. The trial court determined that Ordinance 7080, published on August 21, 1979, validly authorized execution of the lease and held that the 30-day delay had expired when plaintiff filed its petition on October 2, 1979, which was an “in toto” amendment of all other petitions and amending petitions filed by plaintiff.
The statutory procedure of LRS 33:4717.2, which the City advertised it was pursuing, is clear. After the two advertisements mentioned, a hearing for objections is held. If more than five percent of the resident electors of the City object to the inducement lease, an election shall be held for the purpose of transmitting that question to the voters. Thus we hold that a resolution or ordinance could not have been validly enacted authorizing the City to lease public property to an induced enterprise until the required notices were properly and timely given and until the required hearing was held on the date advertised, September 11, 1979.
The City, having advertised that it was proposing to lease “pursuant to” LRS 33:4717.2, is obligated to follow that statute’s procedure and cannot now contend that it may also be empowered to lease under the provisions of LRS 39:991 et seq. which in § 1000 requires only one advertisement. We need not decide what leasing authority LRS 39:991 confers in this context.[5] We uphold, however, the September resolution authorizing execution of the lease, finding that the notice and hearing provisions of LRS 33:4717.2 were met by the City.
Plaintiff’s amended petition of October 2, 1979, was filed before peremption could have occurred. Plaintiff, however, does not allege a cause of action.
Summarized, plaintiff’s allegations are that the public is not getting fair consideration from Sunbelt in return for what the City is giving Sunbelt, that plaintiff is irreparably harmed by private, ultra vires contracts, illegal favoritism, and by unfair competition, and that the statutes and procedures employed unconstitutionally deny plaintiff equal protection of law.
 Industrial inducement statutes are expressly permitted by the constitution and have been upheld against a multitude of constitutional attacks, including that argued by plaintiff. La. Constitution Art. 6, § 21. Hegeman Farms Corp. v. Baldwin, 293 U.S. 163 (1934). See La. Constitution 1921, Art. XIV, § 14(b.2); Miller v. Police Jury of Washington Parish, 226 La. 8, 74 So.2d 394 (1954); Farlouis v. LaRock, 315 So.2d 50 (La.App. 1st Cir. 1975). The Public Contract Law, requiring competitive bidding, is not applicable to industrial inducement projects. Hebert v. Police Jury of West Baton Rouge Parish, 200 So.2d 877 (La.App. 1st Cir. 1967).
Even if we assume that the City’s negotiations and dealings with Sunbelt and Sunbelt’s beginning construction of its plant on industrial park property in April or May (before the correct statutory procedure was eventually undertaken in August) were ultra vires acts, this assumption does not avail plaintiff. These matters, having occurred, became moot when the City timely and properly advertised in accord with the statutory scheme, held hearings for the objections to the project, and enacted a resolution in accord with the statutory scheme, authorizing the execution of the proposed lease. See Farlouis, supra.
If the public (the City) did not make a “good deal” because the proposed consideration for the lease, including the potential economic impart of the induced enterprise, was insufficient as plaintiff generally contends, the forum to be convinced is not the court, but the legislative-executive body (here the Commission Council and Mayor of the City) and the time and place to raise such questions is at the hearing of objections to the project. LRS 33:4717.2. The *902 legality of the resolution, of course, and the legal validity, but not the economic wisdom, of the lease, may be questioned here.
Plaintiff’s allegations question only the economic wisdom of the lease and do not assert any legal grounds of invalidity. The resolution is legal in all respects.
At plaintiff’s cost, judgment rejecting plaintiff’s demands in AFFIRMED.

. (1) When a project requires issuance of bonds and leasing of City property is it necessary for the City Council to comply both with the Bond Validation Statute, LRS 39:991 et seq. and with the authority to lease provisions under LRS 33:4712 and 4717.2?
(2) If notices are published indicating the City intends to comply with one of these statutes is it sufficient for that entity to comply with a different statute?
(3) Can the final resolution authorizing the City to lease City-owned land be separated from the final resolution authorizing the City to issue bonds?
(4) If so, was that final authorization granted at the August 14, 1979, or at the September 11, 1979, meeting?
(5) If LRS 33:4717.2 is applicable and a suit is filed prior to the final adoption of the resolution authorizing the City to lease property, is that suit premature and therefore perempted since the 30-day period has now passed? If so, are “Supplemental and Amending Petitions in Toto” filed subsequent to the adoption of the final resolution, sufficient to overcome the peremptory exception of prematurity?
(6) Is invalidity of the procedure enacting the preliminary agreement prefacing the statutory compliance of the final resolution alone sufficient to taint the validity of the final resolution and thereby nullify that resolution?
(7) Is a private agreement entered into between the City and an enterprise arranging for the enterprise to construct its industry on City property, prior to authorized leasing of that property, a denial of equal protection and due process under the Louisiana and United States Constitutions?

. We hold that the City, having advertised pursuant to LRS 33:4717.2, is obligated to follow the procedures of that statute to obtain authority to lease.
The action that is contemplated we deem to be the enactment of formal authority to execute the lease.

. This resolution reads:
“A RESOLUTION DIRECTING THE MAYOR AND SECRETARY OF THE CITY OF MONROE TO PROCEED WITH THE EXECUTION OF A LEASE AGREEMENT WITH SUNBELT MANUFACTURING, INC., PURSUANT TO THE PROVISIONS OF ORDINANCE NUMBER 7080 OF THE CITY OF MONROE, PREVIOUSLY ADOPTED BY THE COMMISSION COUNCIL OF THE CITY OF MONROE ON AUGUST 14, 1979; AND TO DO ALL OTHER THINGS NECESSARY IN ORDER TO IMPLEMENT THE PROVISIONS OF SAID ORDINANCE
“WHEREAS, Ordinance Number 7080 of the City of Monroe, adopted on August 14, 1979, authorized the execution and delivery of a lease agreement with Sunbelt Manufacturing, Inc., covering 8.75 acres of land in the Monroe Industrial Park and directed that public notice thereof be given pursuant to the provisions of LRS 33:4717.2, and that a hearing be held this date for the purpose of hearing and considering any and all objections thereto, and
“WHEREAS, a hearing was held this date pursuant to said notice, at which all objections were heard and considered, and
“WHEREAS, the Commission Council is of the opinion, after hearing such objections, that the public interest would be served by the execution and delivery of the said lease agreement with Sunbelt Manufacturing, Inc.
“NOW THEREFORE, BE IT RESOLVED, by the Commission Council of the City of Monroe, in regular session convened, that the Mayor and Secretary of the City of Monroe be and they are hereby authorized and directed to execute the proposed lease with Sunbelt Manufacturing, Inc., and to do all other things necessary in order to implement the provisions of Ordinance Number 7080 of the City of Monroe.
“APPROVED AND ADOPTED on this 11th day of September, 1979.”

. The body of Ordinance 7080 is not reproduced here because of its length. The body of the ordinance details the many things mentioned in the title which reads:
“An ordinance authorizing the execution and delivery of a Lease Agreement with Sunbelt Manufacturing, Inc., covering lands in the Monroe Industrial Park and industrial facilities to be constructed thereon; directing that notice of the intention of the City to execute and deliver such lease agreement be published according to law and fixing a date, time and place at which objections thereto will be received; authorizing the issuance of Two Million Seven Hundred Fifty Thousand Dollars ($2,750,000) of Industrial Revenue Bonds, Series 1979 (Sunbelt Manufacturing, Inc.) of the City of Monroe, State of Louisiana to finance such industrial facilities, authorizing the execution and delivery of an Indenture of Mortgage and Pledge to secure such bonds; providing for the sale of said bonds; approving the form of the Notice of Private Sale to be used for the sale of said bonds; acknowledging and accepting the benefits of a Guaranty Agreement; authorizing the appropriate officers of said City to execute certain of the aforementioned instruments and all other documents and certificates deemed necessary in connection therewith; applying to the Secretary of Commerce and the State Bond Commission in connection therewith; and providing for other matters with respect to the foregoing.”

. We note parenthetically, the provisions of LRS 33:4717.2(C) that certain property may be leased by complying with laws other than LRS 33:4717.2.