Dear Mr. Cooper:
You have requested the opinion of this office regarding Certificates of Indebtedness in the amount of $1,040,000, which were issued by the City of Ruston in 1989. According to your letter, the "$1,040,000 was borrowed for sewer and water construction. $250,000 of these proceeds were paid to RLIDC [Ruston-Lincoln Industrial Development Corporation] for infrastructure improvements" at the site of the UNR Industrial, Inc. plant.
Before we address your questions, we must advise that it would be inappropriate for this office to try and interpret the intent of the City of Ruston, and its officials, as expressed in the numerous resolutions and documents enclosed with your letter. We defer to you, in your capacity as attorney for the City, in that regard. However, this office will be happy to advise you in connection with the issues of state law presented in your letter.
Your first question is whether the City of Ruston can expend $250,000 for industrial development.
We refer you to La. Const. (1974) Art. VI, Sec. 21, which authorizes political subdivisions to engage in industrial development, if authorized by the legislature and subject to restrictions imposed by the legislature.
Our research has revealed a number of statutory provisions which authorize political subdivisions to engage in industrial development, in particular, R.S. 33:130.51, et seq, entitled Industrial Park Development, and R.S. 39:551.1, regarding the ability of parishes and municipalities to incur debt, and issue bonds, to encourage industrial enterprises.
We would also refer you to the decision rendered in Farlouis v. LaRock, 315 So.2d 50 (La.App. 1st Cir, 1975), wherein the legality and constitutionality of a variety of expenditures by political subdivisions for purposes of industrial inducement were examined. In pertinent part, the Court stated:
 "It has been observed earlier that the Industrial Inducement Laws in Louisiana have been consistently upheld against a multitude of constitutional attacks. No question can be raised so long as a participating public body acts within the permissible limits of the constitution and these laws. However, we have found nowhere any authority that permits a public body to spend money from its general fund for actual construction purposes in connection with industry inducement without legally assured expectation of reimbursement."
It is the opinion of this office that the City of Ruston can expend funds for industrial inducement, as long as the funds are expended in accordance with the constitutional and statutory authority.
Your second question is whether monies expended for industrial inducement "can come from a source that has been designated in the instrument authorizing Certificates of Indebtedness for `the acquisition and construction of improvements and extensions to the sewerage system and water system' of the City of Ruston.
As previously stated, this office defers to you, in your capacity as City Attorney, to determine the intent of the City as contained in the resolutions and other official documents of the City. As such, it is beyond the purview of this office to determine the intent of the City, or its officials, in designating funds for `the acquisition and construction of improvements and extensions to the sewerage system and water system'.
We note that the phrase, taken alone, may be subject to more than one interpretation. While it can clearly be limited to an authorization to acquire, construct, improve and extend the City's sewer and water systems, the phrase may actually authorize two separate items: the acquisition and construction of improvements (to an industrial site or other property), as well as extensions to the sewer and water systems.
It is our suggestion that you seek the legal opinion of the attorneys who represented the City in connection with this transaction, and/or the bond attorneys who drafted the documents on behalf of the City in connection with the Certificates of Indebtedness, if the intent of the City is difficult to determine.
If it is determined that the proceeds of the Certificates of Indebtedness could only be expended on the sewer and water systems, then the expenditure of the proceeds on the improvement of an industrial site may be a technical default of the City's covenants in favor of the purchaser(s) of the Certificates of Indebtedness. We caution you to examine the Certificate of Indebtedness documents carefully, in order to determine if a default has occurred, and whether the default can result in acceleration of the City's debt.
Your third question raises the issue of whether the public bid laws must be adhered to in connection with expenditures for industrial inducement.
We refer you to the decision rendered in Adams Industries, Inc. v. City of Monroe, 385 So.2d 896, (La.App. 2nd Cir., 1980) and the cases cited therein, including Farlouis v. LaRock, supra. The Adams Industries, Inc. decision states that "The Public Contract Law, requiring competitive bidding, is not applicable to industrial inducement projects."
Your fourth question asks that we address the duties and remedies of the City of Ruston "if there have been any violations of covenants and procedures."
This question is difficult to address, since this office has not been advised that any violations of covenants or procedures have occurred. However, your letter raises the possibility that the following "violations" have occurred, and we will address each.
If the City has expended funds for industrial inducement, without any assurance of repayment and beyond the authorization of the Constitution and the laws of this state, then in accordance with the Farlouis v. LaRock decision, such an expenditure would be in violation of La. Const. (1974) Art. VII, Sec. 14, which prohibits the donation of the funds of political subdivisions on behalf of public or private associations or corporations. However, as recognized in that decision, if those funds were expended by the City without any assurance of repayment, then a court is powerless to grant any relief.
Of course, if the resolutions, documents and contracts executed on behalf of the City indicate that the City expected repayment from RLIDC, from the industrial concern in question, or any other source, then by all means, the City should demand payment and/or institute legal proceedings for the recovery of the money.
If you determine that the expenditure of the $250,000 was not authorized by the City, you might also wish to consider whether the provisions of R.S. 42:1461 are applicable. That provision gives public entities the right to bring an action for recovery of property or other things of value from public officials or employees who "misappropriate, misapply, convert, misuse, or otherwise wrongfully take" funds of the public entity.
As previously noted, your letter raises an issue as to whether the expenditure of $250,000 for infrastructure improvements was in violation of the covenants of the Certificates of Indebtedness. Of course, a violation of the covenants of the Certificates of Indebtedness would give rise to an action on behalf of the Certificate Holder(s) against the City, as opposed to giving rise to an action on behalf of the City.
The City may also wish to request an investigation or audit of its operations by the office of the Legislative Auditor, particularly in regard to this transaction. In accordance with R.S. 24:519, if the audit report discloses illegalities or fraud, same will be disclosed to the district attorney of the proper jurisdiction, in order that he may determine whether any action should be taken. Of course, if you suspect fraud or illegality in connection with this transaction, you should consult with the District Attorney yourself.
Trusting this adequately responds to your request, I remain,
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: JEANNE-MARIE ZERINGUE Assistant Attorney General
RPI:JMZ:jv 276n