829 So.2d 501 (2002)
BOARD OF ASSESSORS OF the CITY OF NEW ORLEANS
v.
CITY OF NEW ORLEANS.
No. 2002-CA-0691.
Court of Appeal of Louisiana, Fourth Circuit.
September 25, 2002.
*502 Gregory D. Guth, New Orleans, LA, for Plaintiff/Appellant.
Andrew L. Kramer, Randall A. Smith, Smith & Fawer, L.L.P., New Orleans, LA, for Defendant/Appellee.
(Court composed of Judge STEVEN R. PLOTKIN, Judge MIRIAM G. WALTZER, Judge PATRICIA RIVET MURRAY).
*503 MIRIAM G. WALTZER, Judge.
STATEMENT OF THE CASE
The Board of Assessors of the City of New Orleans ("the Board") filed suit on 26 October 1999 against the City of New Orleans ("the City") seeking judgment awarding Payments in Lieu of Taxes (PILOT) collected and retained by the City in connection with the Pic-N-Save distribution center located in eastern New Orleans. The PILOT amounted to $500,000 annually from 1 August 1988. The Board also sought judgment declaring LSA-R.S. 51:1160, as amended, to be unconstitutional and ordering the city to distribute any and all future PILOT under the Pic-N-Save agreement to the Board and to all other tax recipient bodies of the City of New Orleans.
The Attorney General and the City appeared, requesting notice of trial pursuant to LSA-C.C.P. art. 1572. The City answered, asserting the following affirmative defenses: (1) the Board lacks legal capacity or right of action, the assertion of claim is without reasonable legal basis and the suit is sanctionable under LSA-C.C.P. art. 863; (2) failure to state a cause of action; (3) prescription; (4) waiver, estoppel and laches; (5) failure to join the State of Louisiana as an indispensable party to the petition for declaratory judgment; and (6) the City's actions were legal under state law and Council resolutions. The City generally denied the Board's allegations.
The Board filed a supplemental and amending petition on 17 August 2000 demanding certification of the Board as representative of a plaintiff class generally composed of all known property tax recipient boards, agencies and entities within the City. The Board alleged that the following questions of fact are common to all class members: (1) whether the City knew or should have known that diversion of PILOT would harm the class; (2) whether the City failed to disclose material facts regarding its diversion of PILOT; (3) whether the City's failure to disclose material facts amounted to fraud or reckless or negligent misrepresentation; (4) whether the City knew or was reckless in not knowing of the unconstitutionality of PILOT diversion; (5) whether the City negligently, recklessly and/or fraudulently and intentionally concealed diversion of PILOT from the Board and other class members; (6) whether the City failed adequately to inform the Board and the class of its intended diversion of PILOT; (7) whether the City failed to give adequate warnings concerning diversion of PILOT; (8) whether the City breached express and/or implied constitutional statutory, contractual or fiduciary duties; (9) whether the class is entitled to recover compensatory damages; (10) whether the class is entitled to prejudgment interest. The Board asserted fraud, negligent misrepresentation, negligence and breach of constitutional, contractual, statutory and fiduciary duties.
The City filed a dilatory exception of improper cumulation of actions pursuant to LSA-C.C.P. art. 926(A)(7). The Board filed a Motion for Summary Judgment on its declaratory relief claim, arguing that LSA-R.S. 51:1160, which allowed municipal industrial development boards ("IDBs") to enter into PILOT agreements with private entities who lease their land, was unconstitutionally amended in 1972 to allow IDBs to tax those private entities at a rate different from the amount of ad valorem taxes such an entity would have to pay if it owned the land. The Board argued that the change of the phrase "shall require the lessee" to "may require the lessee" violates Article VII, Section 14 of the Louisiana Constitution of 1974, prohibiting political subdivisions from loaning, pledging or donating assets to a private *504 entity. On 4 December 2000, the trial court maintained the exception and granted the Board fifteen days within which to elect which action would proceed, and denied the Board's Motion for Summary Judgment. Neither party appealed that judgment.
On 19 December 2000, the Board filed a second supplemental and amending petition deleting the body of its original petition, and adding to its first supplemental and amending petition allegations that the City entered into a PILOT agreement with the City's IDB, the City's Director of Finance, the Tax Assessor of the City's Third Municipal District and West Coast Liquidators, Inc. for the development of the Pic-N-Save distribution center. The Board also alleged that the PILOT agreement provided, inter alia, for payment to the City of $500,000 annually in lieu of ad valorem taxes. These payments were to be distributed to the Board and the other class members in accordance with their share of property tax dollars. Thus, the class would be direct beneficiaries of the PILOT agreement. The Board alleged that the City failed to distribute PILOT to the class in violation of the PILOT agreement, Louisiana constitution and state law, to the detriment of the class. The petition alleges that the City's decision to divert PILOT was based on the mistaken belief that such action was authorized by LSA-R.S. 51:1160. The Board alleges that this statute violates the provisions of the Louisiana constitution prohibiting alienation of state assets without consideration.
The City filed an exception of vagueness, and filed exceptions of failure to state a cause of action and of prescription as to the Board's claim of breach of constitutional, contractual, statutory and fiduciary duties. On 28 March 2001, the trial court rendered judgment granting the City's exception of prescription and dismissed the class claims for fraud, negligent misrepresentation and negligence, subject to amendment of the petition. The court granted the City's exception of no cause of action as to the claim of breach of constitutional, contractual, statutory and fiduciary duties, subject to amendment of the petition.
The Board then filed a third supplemental and amending petition adding claims for damage relating to the following alleged PILOT projects: (1) Chateau Sonesta Hotel; (2) Greystar Project; (3) American Can Company Project; (4) Jazzland project. The City filed its answer, in essentially the same form as its original answer and claiming peremption of all claims.
On 26 November 2001, the City filed a motion for summary judgment. The trial court by judgment of 25 February 2002 granted the motion and dismissed the proceedings. The Board appeals from that judgment. We affirm.
STATEMENT OF FACTS
The City submitted various documents including sworn affidavit and deposition testimony in support of its motion for summary judgment. The affidavit of Marina Kahn, former Director of Finance and Assistant Chief Administrative Officer for the City, established that on 1 August 1988, the City and its IDB entered into an agreement with West Coast Liquidators, Inc. (West Coast) to lease a 76-acre tract of unimproved property located in New Orleans. Ms. Kahn certified to the authenticity of a copy of the lease attached to the City's motion for summary judgment. On the same date, the City, its Finance Director, its Board of Assessors through Errol Williams, Third District Assessor, the IDB and West Coast entered into a PILOT agreement, a copy of which, as an exhibit to the City's motion, Ms. Kahn certified as true and correct. On 4 August 1988, the City Council adopted Resolution *505 No. R-88-162 by Councilman Jackson, a copy of which appears as an exhibit to the City's motion. That resolution permitted the City to apply for and ultimately to receive a $5,200,000 loan from the United States Department of Housing and Urban Development.
According to Ms. Kahn's affidavit, because the PILOT was the only direct source of income from which the City could repay the federal loan, the City wrote letters dated 16 January 1990 to each of the members of the plaintiff class (that is, to each city agency that would receive a portion of tax millages in January 1990) asking each agency to waive its portion of the PILOT for a limited time until the federal loan was repaid, estimated to be ten years. According to the Kahn affidavit, the City received no objections to the waiver requests.
On 22 May 1990, the City Council held a public hearing to discuss and hear objections with respect to the amendment of the PILOT agreement. Ms. Kahn referred in her sworn affidavit to a true and correct copy of the advertisement that appeared in the Times-Picayune on 5 May 1990 notifying the public (and members of the plaintiff class as members of the public) of the hearing. No one appeared on behalf of the Board to object to the plan at that meeting and no written objection was filed.
On 20 December 1990 the City Council unanimously adopted Resolution No. R-90-240, approving the amendment to the PILOT Agreement to allow the City to retain the funds for no more than ten years in order to repay the federal loan. Ms. Kahn identified a true and correct copy of the resolution as an exhibit to the City's motion.
Until March 1996, the City regularly received payments from West Coast pursuant to the PILOT agreement, which the City used to repay the HUD loan. Ms. Kahn identified true and correct copies of receipts for these payments as an exhibit to the City's motion.
In March 1996, the Pic-n-Save facility that had been built on the tract sustained serious fire damage, resulting in cancellation of West Coast's lease agreement. At that point, the PILOT agreement ceased to be in effect and the City received no further payments.
On 11 February 2000, the City's IDB entered into a Lease Agreement with C G Multifamily-New Orleans, L.P., for the "Greystar Project," previously identified by the Board of Assessors. Ms. Kahn identified a true and correct copy of the Lease Agreement submitted as an exhibit to the City's motion and noted that the lease has not been amended.
On 1 March 2000 the City's IDB entered into a PILOT Agreement with 3700 Orleans, L.L.C. for the "American Can Company Project" previously identified by the Board. Ms. Kahn identified a true and correct copy of the PILOT Agreement submitted with the City's motion and noted that the Agreement has not been amended.
The payments received in connection with the Greystar and American Can projects have been distributed to the ad valorem tax recipient bodies, members of the instant class, as set forth in their respective agreements. Furthermore, Ms. Kahn averred that there are no PILOT Agreements for either the "Chateau Sonesta Hotel Project" or the "Jazzland Project" identified by the Board.
The City submitted in support of its motion the deposition of Erroll Williams, assessor for the Third Municipal District, which encompassed the Pic-N-Save property. Williams admitted that no one from the Board objected to the amendment to *506 the PILOT Agreement or appeared at the public hearing to oppose it.
SCOPE OF REVIEW
Appellate courts review summary judgments de novo, using the same criteria applied by trial courts to determine whether summary judgment is appropriate. Independent Fire Insurance Company v. Sunbeam Corp., 99-2181, 99-2257 (La.2/29/2000), 755 So.2d 226, 230.
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of actions such as this. The procedure is favored and shall be construed to accomplish these ends. LSA-C.C.P. art. 966 A(2); Bank of New York v. Williams, XXXX-XXXX p. 8 (La.App. 4 Cir. 8/22/01), 796 So.2d 69, 75. A summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, scrutinized equally, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966 B; Bank of New York v. Williams, at p. 8, 796 So.2d at 75.
The burden of proof remains with the mover. However, if the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. LSA-C.C.P. art. 966 C(2).
An adverse party to a supported motion for summary judgment may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided by law, must set forth specific facts showing that there is a genuine issue of material fact for trial. LSA-C.C.P. art. 967; Townley v. City of Iowa, 97-493 (La.App. 3 Cir. 10/29/97), 702 So.2d 323, 326.
The amended article 966 substantially changed the law of summary judgment. Under the prior jurisprudence, summary judgment was not favored and was to be used only cautiously and sparingly. The pleadings and supporting documents of the mover were to be strictly scrutinized by the court, while the documents submitted by the party in opposition were to be treated indulgently. Any doubt was to be resolved against granting the summary judgment, and in favor of trial on the merits. The jurisprudential presumption against granting the summary judgment was legislatively overruled by LSA-C.C.P. art. 966 as amended. The amendment levels the playing field between the parties, with the supporting documentation submitted by the parties to be scrutinized equally and the removal of the overriding presumption in favor of trial. Under the amended statute, the initial burden of proof remains with the mover to show that no genuine issue of material fact exists. However, under LSA-C.C.P. art. 966(C), once mover has made a prima facie showing that the motion should be granted, the burden shifts to the non-moving party to present evidence demonstrating that material factual issues remain. Once mover has properly supported the motion for summary judgment, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion. The amendment to LSA-C.C.P. art. 966 bring Louisiana's *507 standard for summary judgment closely in line with the federal standard under Fed. Rule Civ.Proc. 56(c). Hayes v. Autin, 96-287 (La.App.3 Cir. 12/26/96); 685 So.2d 691, 694. The summary judgment law was amended by La.Acts No. 483 of 1997 to remove all doubt as to the legislature's intent and to incorporate the Hayes analysis.
Under Fed.Rule Civ.Proc. 56, when the nonmoving party bears the burden of proof at trial, there is no genuine issue of material fact if the nonmoving party cannot come forward at the summary judgment stage with evidence of sufficient quantity and quality for a reasonable juror to find that the party can satisfy his substantive evidentiary burden. In construing the federal summary judgment rule, the United States Supreme Court held that summary judgment shall be granted where the evidence is such that it would require a directed verdict for the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If a defendant in an ordinary civil case moves for summary judgment or a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other, but whether a fair-minded jury could return a verdict for the non-moving party on the evidence presented. Id. The Anderson court further held that the mere existence of a scintilla of evidence on the non-moving party's position would be insufficient; there must be evidence on which the jury could reasonably find for that party. In Lujan v. National Wildlife, 497 U.S. 871, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990), the court held that Fed.Rule Civ.Proc. 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof. Berzas v. OXY USA, Inc., 29,835 (La.App. 2 Cir. 9/24/97), 699 So.2d 1149, 1152-53; Martello v. State Farm Fire and Cas. Co., 96 2375 (La.App. 1 Cir. 11/7/97), 702 So.2d 1179, 1183-84.
A fact is material when its existence or nonexistence is essential to plaintiff's cause of action under the applicable theory of recovery. That is, facts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute. Bank of New York v. Williams, at p. 8, 796 So.2d at 75.
FIRST ASSIGNMENT OF ERROR: The trial court erred in granting the City's Motion for Summary Judgment.
The Board suggests in brief that there is a genuine issue of material fact concerning lack of authorization of the amendment to the PILOT Agreement; however, the Board failed to submit verified evidence disputing the facts as set forth in the Kahn affidavit and accompanying exhibits. Once the City submitted this evidence, the burden of proof shifted to the Board to offer contrary evidence. This it has failed to do.
The Board suggests that there is a genuine issue of material fact as to whether requisite approval was sought from the City Attorney for the PILOT Agreement and its amendment. However, the City provided an opinion of the City Attorney that the PILOT was duly authorized, executed and delivered and constitutes the valid binding and enforceable agreement of the City, Director of Finance, Tax Assessor of the Third Municipal District and the Issuer of the Bonds. The Board seems to imply that this opinion letter, submitted by the City Attorney in connection with the issuance of the development bonds, creates *508 an obligation on the City to submit the PILOT Agreement and amendments to the City Attorney for his approval. We have not been directed to nor does our independent research find a codal, statutory or jurisprudential basis for such an obligation.
The Board suggests that there is a genuine issue as to whether it was permissible or constitutional for the City to retain the PILOT payments. However, this is a legal conclusion, not a "material fact" the existence of which would defeat summary judgment.
The Board contends that there is a genuine issue as to the sort of authorization required from the class members for the diversion of the PILOT to the City to pay the HUD loan. However, the Board does not point to any codal, statutory or jurisprudential basis for requiring such authorization.
The Board suggests that there is a genuine issue as to whether the City attempted to notify the class members of the retention or to receive their approval. However, they have submitted no evidence to contradict Ms. Kahn's affidavit establishing that letters were sent to the class members notifying them of the proposed retention, that public notice of the hearing concerning retention was properly published and that no class member voiced an objection prior to the Board's having filed the instant petition in 1999.
The Board finally contends that there exist genuine issues of material fact as to whether the City breached fiduciary duties owed to the class. This claim was disposed of by the trial court's unappealed judgment of 28 March 2001. The trial court granted the City's exception of no cause of action as to the claim of breach of fiduciary duty, and the Board did not appeal.
This assignment of error is without merit.
SECOND ASSIGNMENT OF ERROR: The trial court erred in failing to declare LSA-R.S. 51:1160 unconstitutional.
The Board contends that LSA-R.S. 51:1160 as amended in 1972 violates the provisions of Article VII, Section 14(A) of the Louisiana Constitution of 1974. The constitution provides, among other things not relevant to this case, that except as otherwise authorized by the state constitution, the assets of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private.
Title 51 of the Louisiana Revised Statutes relates to "Trade and Commerce". In Chapter 7, "Municipal and Parish Industrial Development Boards", LSA-R.S. 51:1160 as amended through its most recent amendment, effective 25 June 1972, provides:
The corporation is hereby declared to be performing a public function on behalf of the municipality or parish with respect to which the corporation is organized and to be a public instrumentality of such municipality or parish. Accordingly, the corporation and all properties at any time owned by it and the income therefrom and all bonds issued by it and the income therefrom shall be exempt from all taxation in the state of Louisiana; provided, however, that the corporation may require the lessee of each of the projects of the corporation to pay annually to parish or municipal taxing authorities, through the normal collecting agency, a sum in lieu of ad valorem taxes to compensate such authorities for any services rendered by them to such projects which sum shall not be in excess of the ad valorem taxes such lessee would have been obligated to pay to *509 such authorities had it been the owner of such project during the period for which such payment is made....
This statute is entitled to the presumption of constitutionality, and the Board has the burden of proving that the statute is unconstitutional. Soloco, Inc. v. Dupree, 97-1256 p. 3 (La.1/21/98), 707 So.2d 12, 14.
In its Motion for Summary Judgment on the constitutional question, the Board made the same legal arguments it makes before this Court. The trial court rejected the Board's legal contention in its judgment of 4 December 2000, which the Board failed to appeal. We find no reasons for that judgment in the record, so it is unclear whether the trial court denied the motion as a matter of law or believed there were outstanding genuine issues of material fact precluding summary judgment. We will, therefore, consider the issue as raised by the Board in the instant appeal.
The constitutional prohibition upon which the Board relies is not absolute. Section 14 itself contains, at present, ten exceptions, including use of public funds for social welfare programs and donation of blighted property and the state's tax and lien interest in such property. Furthermore, subpart (C) of Article VII, section 14 provides that for a public purpose the state and its political subdivisions may engage in cooperative endeavors with, among others, the United States and its agencies, or with any public or private association, corporation or individual.
The Board would extend the constitutional prohibition against alienation of state assets to ban an agreement between agencies allowing a private corporation to pay a set amount of tax to the City in order to induce the private corporation to locate its distribution facility in an economically underdeveloped part of the City, thereby enhancing the local economy and benefiting disadvantaged citizens and taxpayers. Clearly, this is a suitable public purpose. Furthermore, the proceeds of the PILOT were paid to HUD pursuant to the loan agreement between the City and HUD. The transaction, when viewed as a whole, consists of several parts: the PILOT Agreement between the developers and the City, the related HUD loan to the City, and the development bonds issued by the IDB and purchased by individual investors. Consideration clearly flows through the transaction: the developer gains from the setting of his PILOT, the City is able to have an economically disadvantaged area developed and is given the funds with which to pay its HUD loan, the bond holders are assured of a return on their investments and the citizens receive the benefit of economic development that would not have taken place absent the PILOT and HUD loan.
A public entity has wide discretion to contract, provided it receives sufficient consideration, which may include economic return, increased employment and attraction of similar development to the area. Hebert v. Police Jury of West Baton Rouge Parish, 200 So.2d 877 (La.App. 1 Cir.1967); see also City of New Orleans v. Disabled Am. Veterans, 223 La. 363, 65 So.2d 796 (1953) allowing a public entity to rent a building to a private group for less than fair market value where the lessees were obligated to maintain and insure the premises, and hold the public entity harmless for injuries and claims.
In the instant case, the City did not loan money to the developer without expectation of return; there is clear evidence that the City expected to receive substantial funds in consideration of their assistance in making the project work financially.
Such a situation clearly withstands constitutional attack under the reasoning of City of Port Allen, Louisiana v. Louisiana *510 Municipal Risk Management Agency, Inc., 439 So.2d 399 (La.1983). There a statute imposed joint liability upon all government subdivisions that participated in a risk management scheme. The supreme court held that this agreement by a public entity to pay a claim incurred by a separate entity because of the latter's tort or compensation claim would, in effect, be a donation by one subdivision to another, violating the constitutional provision. It cannot be said that the City in the instant case has undertaken, without cause or consideration, the obligation of another.
In Farlouis v. LaRock, 315 So.2d 50 (La.App. 1 Cir.1975), taxpayers sued to obtain an accounting of public expenditures and a permanent injunction prohibiting further public expenditures to carry out an industrial inducement agreement between a parish IDB and a private corporation. The defendant rendered the requested accounting, and the appeal dealt only with the injunction issue and payments for construction of a parking lot and pre-contractual bulldozer work. The court approved the parking lot expenditure, finding that it was for a public purpose, was derived from federal funds to be repaid under the terms of the contract, and repayment would assure that there would be no net cost to taxpayers. The First Circuit rejected the Town's payment for preliminary bulldozer work and "emergency" contracts for dirt fill, finding no authority permitting a public body to spend general funds for actual construction purposes (as distinguished from incidental expenses such as travel and operating costs) in connection with industry inducement without legally assured expectation of reimbursement. The court also noted that the town had not shown compliance with the requirements for declaration of an emergency under LSA-R.S. 38:2211. The court noted:
"It has been observed earlier that the Industrial Inducement Laws in Louisiana have been consistently upheld against a multitude of constitutional attacks. No question can be raised so long as a participating public body acts within the permissible limits of the constitution and these laws. However, we have found nowhere any authority that permits a public body to spend money from its general fund for actual construction purposes in connection with industry inducement without legally assured expectation of reimbursement. In the Constitution it is explicit that the authority to spend money is confined to funds derived from the sale of bonds when such expenditure is used to acquire sites or construct of improve buildings and necessary property and appurtenances thereto for industrial purposes. The proposed expenditure herein amounts to ... approximately one-half the annual budget of that Town. The Town ... had no expectation of recovery of this expenditure."
The Board has not shown any net negative effect to the citizens and taxpayers of the City of New Orleans as a result of the series of transactions leading to development of the Pic-N-Save property.
This Court noted that the purpose of the constitutional prohibition on which the Board relies is to protect against alienation of public assets for other than governmental purposes, and does not intend to address the conduct of the governmental entity's legitimate affairs. See, State ex rel. Jefferson Parish School Board v. City Park Improvement Assn., 345 So.2d 597, 600 (La.App. 4 Cir.1977).
The failure of the Board to object in response to the letter of notification, the notice of public hearing, or the various publications, official and otherwise, concerning the series of transactions, may well make the entire issue moot. In Adams Industries, Inc. v. City of Monroe, 385 So.2d 896, 901 (La.App. 2 Cir.1980), *511 the court found that once the public entity had advertised timely, held hearings for objections to the project, and authorized execution of the lease, plaintiff was precluded from challenging the expenditure and the matter was moot.
The City has also referred us to similar situations in other states where the transaction survived similar constitutional attack.
This assignment of error is without merit.
THIRD ASSIGNMENT OF ERROR: The trial court erred in ruling that LSA-R.S. 9:2798.1 was applicable to the City's actions herein.
Because of our disposition of the first and second assignments of error, this assignment is moot.
CONCLUSION AND DECREE
For the foregoing reasons, we affirm the judgment of the trial court and assess the costs of this appeal to appellant.
AFFIRMED.