952 So.2d 746 (2007)
Thelonius GRANT
v.
AMERICAN SUGAR REFINING, INC., et al.
No. 2006-CA-1180.
Court of Appeal of Louisiana, Fourth Circuit.
January 31, 2007.
*747 Mickey P. Landry, Frank J. Swarr, David R. Cannella, Landry & Swarr, L.L.C., New Orleans, Counsel for Plaintiff/Appellant.
Lawrence G. Pugh III, Edward R. McGowan, Montgomery Barnett Brown Read Hammond & Mintz, New Orleans, Counsel for Defendant/Appellee (Eagle, Inc.).
(Court composed of Judge MICHAEL E. KIRBY, Judge MAX N. TOBIAS Jr., Judge ROLAND L. BELSOME).
MICHAEL E. KIRBY, Judge.
Plaintiff, Thelonius Grant, appeals the granting of a motion for summary judgment in favor of Defendant, Eagle Asbestos & Packing Company (n/k/a Eagle, Inc.). We find the trial court erred in finding that there was no genuine issue of material fact as to exposure and that it misapplied the standard for the admission of expert witness testimony in a summary judgment proceeding. Therefore, we reverse and remand.
Plaintiff, who is forty-seven (47) years old, sued Eagle for contraction of malignant peritoneal mesothelioma, a cancer of the inner lining of the abdominal cavity caused by exposure to asbestos. Eagle was alleged to be the seller, installer and remover of asbestos-containing insulation products at the Domino Sugar Refinery in Arabi.
Plaintiff alleges that he contracted malignant mesothelioma as a result of exposure to asbestos brought home on the work clothes of his father, William Grant. William Grant worked at the Domino Sugar Refinery in Arabi, Louisiana, from approximately 1979 until 1983. Plaintiff alleges he was exposed to asbestos when he washed his father's work clothes.
On December 23, 2004, plaintiff filed suit for personal injury damages. The original petition named six defendants. Generally, the defendants were William Grant's employer, other premises owners and various manufacturers, producers, and suppliers of asbestos-containing products, as well as the insurer of one of these parties.
On April 29, 2005, the trial court granted plaintiff's motion for expedited trial setting and set the trial on the merits for November 7, 2005. The trial date was lost due to Hurricane Katrina. After Civil District Court reopened, trial on the merits was re-set for May 3, 2006.
On April 21, 2006, the trial court heard Eagle's motion for summary judgment. Eagle alleged two bases in support of its motion for summary judgment:
1) Plaintiff cannot produce evidence that Eagle supplied or used any asbestos containing products at the Domino Sugar Refinery at the time of William Grant's employment from 1978 to 1982; and
2) Thelonius Grant's second-hand exposure to Eagle's asbestos was not a substantial *748 factor in causing his mesothelioma.
In response, plaintiff filed an opposition to summary judgment, and submitted evidence of specific facts he contended established a genuine issue of material fact so that Eagle is not entitled to judgment as a matter of law. Specifically, plaintiff presented the following evidence:
1) The work records of William Grant
2) Leo Santana's deposition
3) Affidavit of Expert Hygienist, Frank Parker
4) Deposition of Don Roussel
5) Deposition of Kenneth Dufour
6) Deposition of Peter Maraia
7) Work records concerning the Domino Refinery
ACTION OF THE TRIAL COURT
In a Judgment dated April 26, 2006, the trial court granted Eagle's motion for summary judgment and dismissed with prejudice plaintiff's claims against Eagle. There were no written reasons assigned for the granting of the Judgment. We do note that from the transcript of the hearing the trial court inquired about plaintiff's expert hygienist:
"Was the guy there during the time period?"
LEGAL ANALYSIS
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Independent Fire Insurance Co. v. Sunbeam Corp., 99-2181, 99-2257, p. 7 (La.2/29/00), 755 So.2d 226, 230; Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991). Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, scrutinized equally, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). However, as noted by the Supreme Court in Sunbeam, supra, the trial court cannot make credibility determinations on a motion for summary judgment. Sunbeam, p. 16, 755 So.2d at 236. We noted in Berthelot, infra, that it is not the function of the trial court on a motion for summary judgment to determine or even inquire into the merits of the issues raised. Additionally, the weighing of conflicting evidence has no place in summary judgment procedure. Berthelot v. Avondale Industries, Inc., 02-1779, p. 3 (La.App. 4 Cir. 2/26/03), 841 So.2d 91, 93. See also, Knowles v. McCright's Pharmacy, Inc., 34, 559, p. 3 (La.App. 2 Cir. 4/4/01), 785 So.2d 101, 103.
The burden of proof remains with the mover. Board of Assessors of the City of New Orleans v. City of New Orleans, 02-0691, p. 8 (La.App. 4 Cir. 9/25/02), 829 So.2d 501, 506. However, if the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mover's burden on the motion does not require the mover to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Id. at pp. 8-9, 829 So.2d at 506. Thereafter, if the adverse party fails to produce factual support sufficient to establish that it will be able to satisfy their evidentiary burden of proof at trial, there is no genuine issue of material fact. Id. at p. 9, 829 So.2d 506; La. C.C.P. art. 966(C)(2).
A fact is material if it is essential to plaintiff's cause of action under the applicable *749 theory of recovery and if without the establishment of the fact by a preponderance of the evidence, plaintiff could not prevail. Generally, material facts are those that potentially insure or preclude recovery, affect the litigant's ultimate success, or determine the outcome of a legal dispute. Prado v. Sloman Neptun Schiffahrts, A.G., 611 So.2d 691, 699 (La.App. 4 Cir.1992).
Finally, in Coto v. J. Ray McDermott S.A., 99-1866 (La.App. 4 Cir. 10/25/00), 772 So.2d 828, this Court discussed the standard for reviewing an appeal of a motion for summary judgment. This Court stated that "[i]n determining whether an issue is genuine, courts cannot consider the merits, make credibility determinations, evaluate testimony or weigh evidence." Id. at p. 4, 772 So.2d at 830.
To determine whether the trial court erred in granting Eagle's motion for summary judgment, we must determine whether there are any genuine issues of material fact.
We note at the outset that in asbestos cases there is a need to show that the plaintiff was exposed to the defendant's asbestos product. To satisfy this burden, plaintiff submitted William Grant's employment records, that place him at the Domino Sugar Refinery from approximately 1979 until 1983. Eagle does not contest this point, but argues that plaintiff's burden is to prove a specific exposure to asbestos and it asserts the employment records do not meet that burden here. We find at the very least Thelonius Grant creates a genuine issue of material fact by submitting an Amstar Corp. [Domino Sugar Refinery] Receiving Report dated September 8, 1982. This Receiving Report names Eagle as the contractor who satisfactorily completed a contract to perform the following:
1. Repair insulation on pit tank heads and rejacketBldg. 19-1 -250°F.
2. Insulate condensate lines on ground floor near pit tankBldg. 19-1250°F.
3. Repair insulation on # 3 turbine exhaust steam expansion joint and stop valveBldg. 19-1260°F. Insulate transfer line19-3216°F.
4. Repair insulation on deaerator head (illegible symbol) P. -Bldg. 19-2250°F.
5. Rejacket # 1 boiler feedwater line and install blanket insulation on valves Bldg. 19-2 275°F/600°F.
6. Repair insulation on # 1 boiler steam drum head and main steam line including new porta(illegible) blanket insulation for manway, safety valve and line flange Bldg. 19-2430/600°F.
7. Repair boilers 2 through 6 insulation on rear main steam lineBldg. 18-2520°F.
8. Repair and rejacket feedwater line on boilers 2 through 6 and install portable blankets on drum headsBldg. 19-2275/430°F.
9. Fabricate and install removable blankets insulation on # 1 boiler and drum bottom Bldg. 19-2430°F.
10. Insulate condensate system tank and pipe pump in Bldg. 20-1212°F.
11. Insulate 1½", 2", 3" and 4" condensate piping to condensate tank from liquid sugar heatersBldg. 20-1/2215°F.
12. Insulate crystallizer heating systemblankets to be used for valvesBldg. 21-6240°F.
The work to be performed hereunder shall commence on 9/13/82 and shall be completed by 10/15/82.
Eagle contends that this Receiving Report is insufficient to establish William Grant's exposure to asbestos because it references "insulation," not asbestos. However, we find this report, when reviewed *750 with the following circumstantial evidence, creates a genuine issue of material fact as to William Grant's exposure to asbestos containing products. Eagle has brought forth no evidence to prove that William Grant could not have been exposed, nor has the defendant ever denied that Domino Sugar Refinery did have asbestos-containing materials. Without more, the fact that Mr. Grant's father worked on a premises that had asbestos-containing products, raises a genuine issue of material fact as to whether Thelonius Grant was exposed. Nevertheless, plaintiff further bolsters his argument with more evidence.
Plaintiff submitted the deposition of Mr. Fred Schuber, Eagle's President, who identified Mr. Leo Santana as one of several estimators working for Eagle. Plaintiff submitted Mr. Santana's deposition concerning the asbestos-containing products Eagle carried. Mr. Santana's deposition confirmed that Eagle had contracts with the sugar refinery, known to him as American Sugar or AmStar, and that Eagle used asbestos-containing Garlock sheet gaskets. Mr. Santana's deposition further confirmed that Eagle did the insulation work at the sugar refinery where Mr. Grant's father worked in the forties, fifties, and sixties.
Plaintiff submitted the deposition of Mr. James Donald "Don" Roussel, an engineer at the Domino Sugar Refinery from 1955 to 1960 (as utility superintendent) and from 1968 to 1990 (as power superintendent). Mr. Roussel testified that the pipe-fitting foreman would inspect the plant, specifically checking pipes, and if the foreman observed nicks in the insulation, he would report it to Mr. Roussel, who would write a purchase requisition.
In regard to the insulation contractor who would supply materials and labor, Mr. Roussel testified that Eagle was the only contractor he recalled doing insulation work at the plant. Later in Mr. Roussel's deposition, he quantified Eagle's presence at the Domino Sugar Refinery, stating that he recalled Eagle performing 90% of the insulation work at Domino.
In addition, plaintiff submitted Mr. Kenneth Joseph Dufour's deposition. Mr. Dufour worked at Domino Sugar from 1965 to 2001 as a forklift operator in Warehouse & Shipping; a maintenance mechanic, doing repairs on equipment and machinery throughout the whole plant; and as a utility mechanic in the boiler house.
In regard to insulation work at the plant, Mr. Dufour testified that Eagle was the only contractor that did insulating in the plant in addition to Mr. Lemoine, who was a Domino insulator who did minor jobs. Mr. Dufour testified that asbestos was in the plant the entire time he worked there. He also recalled that Eagle did stenciling on pipes indicating the presence of asbestos. Finally, Mr. Dufour stated that Eagle removed asbestos from the Pan House and that Eagle supplied insulation to the plant.
Plaintiff also submitted Mr. Pete Maraia's deposition. He was a staff engineer at Domino Sugar beginning in 1974 and was assigned to the Arabi refinery beginning in 1982. Mr. Maraia stated that asbestos was located in the Char House and the Pan House. Mr. Maraia relates that Eagle would inspect the insulation at the plant when he or his supervisor decided it was needed. Mr. Maraia also stated that Eagle did the stenciling on the insulation to mark asbestos.
Finally, plaintiff's own deposition states that he washed his father's work clothes while his father was employed at the sugar refinery.
Defendant attempts to refute the plaintiff's depositions, affidavits and other evidence by contending William Grant's period *751 of employment in Domino's building was either too late or too early to have been exposed to asbestos. For example, defendant argues that plaintiff failed to show that Eagle installed or removed asbestos containing material at the refinery between 1979 to 1983. Nevertheless, the Receiving Report contradicts this contention, and a reasonable trier of fact could find that insulation that was being replaced contained asbestos.
While defendant's theory may prevail at trial as being more credible than plaintiff's theories, it certainly entails a credibility call, and as such is not a matter proper for summary judgment.
Defendant cites Zimko v. American Cyanamid, 03-0658 (La.App. 4 Cir. 6/8/05), 905 So.2d 465, for the proposition that in that case the trial court found no fault on Eagle's part. Nevertheless, Zimko is distinguishable from this case, most notably given that Zimko was not decided on summary judgment, but rather after a full trial on the merits.
Finally, from the transcript, we infer that the trial court misapplied the standard for admission of expert witness testimony, in the form of Mr. Frank Parker's affidavit. The record indicates that the trial court asked: "Was the guy ever there during the time period?" The trial court was referring to the plaintiff's industrial hygienist expert, Frank Parker, and the time period during which William Grant worked at the plant. Moreover, the trial court also posed the following question concerning the expert testimony:
So he doesn't (k)now (sic) from personal knowledge that the asbestos was deteriorating?
In Adams v. Asbestos Corp. Ltd., 39,952 (La.App. 2 Cir. 10/28/05), 914 So.2d 1177, our brethren correctly stated that:
La. C.C.P. art. 967(A) provides that supporting and opposing affidavits of experts may set forth the experts' opinions on the facts as would be admissible under La. C.E. art. 702, and shall affirmatively show that the experts are competent to testify as to the matters stated therein.
* * *
In Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, 99-2257 (La.2/29/00), 755 So.2d 226, 235-236, the Louisiana Supreme Court held that the Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), State v. Foret, 628 So.2d 1116 (La.1993) standards should be considered by the trial court in deciding whether to admit expert opinion evidence at the summary judgment stage. In doing so, the court reinforced the following important underlying principles relevant to consideration of expert evidence at the summary judgment stage:
The first is that the trial judge cannot make credibility determinations on a motion for summary judgment. See Sportman Store of Lake Charles, Inc. v. Sonitrol Security Systems of Calcasius, Inc., 99-C-0201, p. 6 (La.10/19/99), 748 So.2d 417 ("[t]he rule that questions of credibility are for the trier of fact applies to the evaluation of expert testimony"); Maraist & Lemmon, supra, p. 145 ("[i]n deciding a motion for summary judgment, the court must assume that all of the affiants are credible . . ."). Second, the court must not attempt to evaluate the persuasiveness of competent scientific studies. In performing its gatekeeping analysis at the summary judgment stage, the court must "focus solely on the principles and methodology, not on the conclusion is they generate." Daubert, supra at 595, n. 6, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469. Third, the court "must draw those inferences from the undisputed facts which are most favorable to the party *752 opposing the motion." Maraist & Lemmon, supra, p. 145. Fourth, the most importantly, summary judgments deprive litigants of the opportunity to present their evidence to a jury and should be granted only when the evidence presented at the motion for summary judgment establishes that there is no genuine issue of material fact in dispute. If a party submits expert opinion evidence in opposition to a motion for summary judgment that would be admissible under Daubert-Foret and the other applicable evidentiary rules, and is sufficient to allow a reasonable juror to conclude that the expert's opinion on a material fact more likely than not is true, the trial judge should deny the motion and let the issue be decided at trial. 39,952 (La.App. 2 Cir. 10/28/05) at 5-6; 914 So.2d at 1180-1181.
These questions indicate to us the trial court inappropriately made a credibility determination regarding the content of Mr. Parker's affidavit based upon his absence from the work site at the time of William Grant's exposure. Further the record suggests the trial court evaluated Mr. Parker's persuasiveness in derogation of the above pronouncement. These infractions of the rules governing disposition of motions for summary judgment are a further basis to reverse the grant of summary judgment in this case.
Based on the foregoing discussion, we conclude that the trial court erred in granting summary judgment in favor of Eagle. Therefore, we reverse the trial court judgment granting summary judgment in favor of the defendant and remand this case to the trial court for further proceedings.
REVERSED AND REMANDED