957 So.2d 1275 (2007)
Frank HENRY and Mary Henry, Individually and on Behalf of their Minor Children
v.
SOUTH LOUISIANA SUGARS COOPERATIVE, INC.
No. 2006-C-2764.
Supreme Court of Louisiana.
May 22, 2007.
Gieger, Laborde & Laperouse, Robert Irwin Siegel, Brendan Patrick Doherty, New Orleans, for Applicant.
Harris & Rufty, Alfred Jackson Rufty, III, Rufus Carrollton Harris, III, Cindy Galpin Martin, Allen & Gooch, Michael E. Parker, Lafayette, George Stubbs Bourgeois, Jr., for Respondent.
TRAYLOR, Justice.
This case presents an issue of insurance policy interpretation. Finding that the terms of the insurance policy unambiguously exclude coverage, we reverse the summary judgment determination by the lower court which found coverage.

FACTS AND PROCEDURAL HISTORY
Plaintiffs Frank Henry ("Henry") and Mary Henry filed suit seeking damages for personal injuries allegedly sustained by Henry on July 9, 2003 at the South Louisiana Sugars Cooperative, Inc. ("So. La. Sugars") sugar mill facility in St. James Parish, Louisiana. On that date, Henry, an employee of Quality Liquid Feeds, was aboard a moored barge used as a dock (hereinafter referred to as the "dock barge") which was owned by So. La. Sugars. Henry was loading molasses onto a cargo barge that was alongside the dock barge on the Mississippi River. Connecting the dock barge to the adjacent cargo *1276 barge was a gangplank attached to the dock barge that could be raised and lowered. Henry claimed that the gangplank slipped as he was walking on the gangplank, causing him to fall and seriously injure his back, both legs, and right wrist. Named defendants in the plaintiffs' suit were So. La. Sugars and its insurer.
At the time of the incident, Audubon Indemnity Company ("Audubon") provided general liability coverage to So. La. Sugars under a comprehensive general liability ("CGL") policy.[1] Westport Insurance Company ("Westport") provided to So. La. Sugars a Protection & Indemnity (P & I) insurance policy which listed the dock barge as a covered vessel.[2]
Upon being sued by the Henry plaintiffs for alleged deficiencies in the dock barge, So. La. Sugars demanded coverage and a defense from Audubon. By letter dated December 15, 2004, Audubon denied coverage on the ground that the CGL policy had an exclusion for injury occurring on watercraft which barred coverage.
So. La. Sugars named Audubon as a defendant in a third-party complaint, asserting that the Audubon CGL policy provided coverage and demanding a defense to and indemnity for the claims of Henry. So. La. Sugars additionally claimed that Audubon was in bad faith for refusing to provide a defense and indemnity, and sought statutory penalties and attorneys fees.[3] Audubon answered the third-party complaint of So. La. Sugars, denying coverage and asserting as an affirmative defense that coverage for the Henry incident was found in the Westport P & I policy, wherein the dock barge in question was specifically listed as a covered vessel.[4]
Cross motions for summary judgment were filed by Audubon and So. La. Sugars regarding coverage for the Henry claim, as well as the bad faith claim asserted by So. La. Sugars. Audubon maintained that no coverage was owed under its policy based on a clear and unambiguous watercraft exclusion. Audubon further argued that the presence of the watercraft exclusion made the insurer's denial of coverage neither arbitrary nor capricious and provided no basis for the insured's claim to statutory penalties or attorney fees. So. La. Sugars maintained that an exception to the watercraft exclusion applied, by which operation the policy provided coverage. Under the facts of this case, So. La. Sugars claimed that Audubon's actions were arbitrary and capricious in denying coverage.
After a hearing on the cross-motions for summary judgment, the district court denied Audubon's summary judgment motion in part, finding the CGL policy did provide coverage, but granting the motion in part, finding So. La. Sugars was not entitled to statutory penalties or attorney fees. The district court similarly denied in part and granted in part So. La. Sugar's motion for summary judgment, granting as to the coverage issue but denying the insured's request for penalties and attorney fees. The district court did not issue reasons for *1277 judgment. Audubon appealed the district court's finding that the CGL policy provided coverage.
The court of appeal affirmed the district court's determination that coverage existed under the CGL policy, finding that the language in the insurance contract was ambiguous, which ambiguity should be held against the insurer, Audubon.[5] We granted Audubon's writ to review the correctness of that determination.[6]

STANDARD OF REVIEW
The law applicable to review of a grant or denial of a motion for summary judgment, and to the proper interpretation of an insurance policy, was recently discussed in Bonin v. Westport Ins. Corp., 2005-886 (La.5/1/06), 930 So.2d 906. In Bonin, we stated:
A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(B). This court reviews a grant or denial of a motion for summary judgment de novo, Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991). Thus, this court asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. Robinson v. Heard, 01-1697, pp. 3-4 (La.2/26/02), 809 So.2d 943, 945.
Interpretation of an insurance policy usually involves a legal question which can be resolved properly in the framework of a motion for summary judgment. Robinson, 01-1697 at p. 4, 809 So.2d at 945. An insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Civil Code. Cadwallader v. Allstate Ins. Co., 02-1637, p. 3 (La.6/27/03), 848 So.2d 577, 580; Louisiana Ins. Guar. Ass'n v. Interstate Fire & Casualty Co., 93-0911, p. 5 (La.1/14/94), 630 So.2d 759, 763. The judicial responsibility in interpreting insurance contracts is to determine the parties' common intent. La. C.C. art.2045; Louisiana Ins. Guar. Ass'n, 93-0911 at p. 5, 630 So.2d at 763; Garcia v. St. Bernard Parish School Board, 576 So.2d 975, 976 (La.1991). Words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. La. C.C. art.2047; Cadwallader, 02-1637 at p. 3, 848 So.2d at 580; Carbon v. Allstate Ins. Co., 97-3085, p. 4 (La.10/20/98), 719 So.2d 437, 439.
An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Carrier v. Reliance Ins. Co., 99-2573, pp. 11-12 (La.4/11/00), 759 So.2d 37, 43 (quoting Louisiana Ins. Guar. Ass'n, 93-0911 at p. 5, 630 So.2d at 763). Unless a policy conflicts with statutory provisions or public policy, it may limit an insurer's liability and impose and enforce reasonable conditions upon the policy obligations the insurer contractually assumes. Carbon, 97-3085 at p. 5, 719 *1278 So.2d at 440; Louisiana Ins. Guar. Ass'n, 93-0911 at p. 6, 630 So.2d at 763.
If after applying the other general rules of construction an ambiguity remains, the ambiguous contractual provision is to be construed against the insurer and in favor of coverage. Cadwallader, 02-1637 at p. 3, 848 So.2d at 580; Carrier, 99-2573 at p. 12, 759 So.2d at 43-44. Under this rule of strict construction, equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer. Louisiana Ins. Guar. Ass'n, 93-0911 at p. 6, 630 so.2d at 764; Garcia, 576 So.2d at 976. That strict construction principle, however, is subject to exceptions. Cadwallader, 02-1637 at p. 3, 848 So.2d at 580; Carrier, 99-2573 at p. 12, 759 So.2d at 43-44. One of these exceptions is that the strict construction rule applies only if the ambiguous policy provision is susceptible to two or more reasonable interpretations. Cadwallader, 02-1637 at p. 3, 848 So.2d at 580; Carrier, 99-2573 at p. 12, 759 So.2d at 43-44. For the rule of strict construction to apply, the insurance policy must be not only susceptible to two or more interpretations, but each of the alternative interpretations must be reasonable. Cadwallader, 02-1637 at p. 3, 848 So.2d at 580; Carrier, 99-2573 at p. 12, 759 So.2d at 43-44.
Bonin, 05-0886 at p. 4-6, 930 So.2d at 910-911.

LAW AND ANALYSIS
The question presented to the court is whether there exists a genuine issue of material fact as to whether the CGL policy issued by Audubon to So. La. Sugars provides coverage which would require Audubon to indemnify So. La. Sugars for liability the sugar mill may incur as a result of Henry's alleged accident. The policy language at issue provides, in pertinent part, as follows:
2. Exclusions
This insurance contract does not apply to:
* * *
g. Aircraft, Auto or Watercraft
"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".
This exclusion does not apply to:
(1) A watercraft while ashore on premises you own or rent; . . .
Audubon asserts that the language of the watercraft exclusion in its policy unambiguously excludes coverage for the alleged injuries of Henry because the dock barge where the injury allegedly occurred was a watercraft and the alleged incident arose out of the use, ownership, maintenance or entrustment to others of that watercraft. So. La. Sugars argues that Audubon's position fails because Audubon's policy expressly states that the watercraft exclusion does not apply to watercraft while "ashore," and that the dock barge's moored position alongside the shore satisfies the requirement of being "ashore."
The pleadings, deposition excerpts, answers to interrogatories and admissions submitted with the cross-motions for summary judgment show there is no real dispute that the dock barge is a watercraft[7] or that the Henry accident as alleged arose out of So. La. Sugars' "ownership, *1279 maintenance, use or entrustment to others" of the dock barge. Consequently, the provisions of the watercraft exclusion are satisfied. Unless the provisions of the exception to the watercraft exclusion apply, there is no coverage under the Audubon policy.
The documents submitted with the summary judgment motions further show that the dock barge had been moored in the same location in front of the sugar mill to assist in loading operations prior to the accident since, at least, 1997. The dock barge was secured on four sides by means of posts driven into the riverbed of the Mississippi River, making the dock barge stationary in lateral or forward movement, but allowing the dock barge to rise and fall with the movement of the tide. The dock barge was surrounded on all sides by water. A walkway and a sugar conveyor extended from the grounds of the sugar mill facility to the dock barge.
The word "ashore" is not defined in the Audubon policy. Nor is the word "ashore" found in Black's Law Dictionary.[8] This is apparently a matter of first impression in this court.[9]
As the word "ashore" is one in common usage, "ashore" is defined in general purpose dictionaries which the parties rely on for the plain, ordinary and generally prevailing meaning of the word. So. La. Sugars relies on dictionary definitions which define "ashore" as "toward or on the shore."[10] Audubon relies on a dictionary definition which defines "ashore" to mean "on land."[11]
From these definitions it is clear to us that the word "ashore" in its ordinary meaning conveys both a direction and a location. This being so, it is also clear to us that the word's unambiguous usage in the context of the insurance policy at issue refers to a location. Consequently, the meaning of the word "ashore" within the context of the insurance policy at issue means "on land," or the opposite of "afloat," and not "toward land."[12] Since the facts show that the dock barge was moored but still completely afloat, the dock barge was not "ashore" under the policy and the watercraft exclusion applies in this case to preclude coverage.[13]
This interpretation is strengthened by reading the word "ashore," as we must, in *1280 context with the entire phrase in which the word is found in the exception to the watercraft exclusion. The exception to the watercraft exclusion states that coverage would be provided to a watercraft "ashore on premises owned or rented" by the insured. As admitted by counsel for So. La. Sugars at oral argument, and as our review of the record confirms, there is no indication in the record that the sugar mill rents or owns the river bottom where the posts securing the dock barge are secured. Here, there is no dispute that the dock barge is moored by means of posts driven into the riverbed of the Mississippi River. The Mississippi River, as a natural navigable water body, is a public thing, insusceptible of private ownership, including its river bottoms. See La. C.C. art. 450.[14] Consequently, even if the meaning of the word "ashore" was as argued by So. La. Sugars to include a watercraft floating but moored next to the shore, its dock barge is not located on premises owned or rented by So. La. Sugars. The exception to the watercraft exclusion is not applicable under the facts of this case for this additional reason.

CONCLUSION
We find the question presented here, the interpretation of the insurance policy at issue, involves a legal question which can be resolved properly in the framework of a motion for summary judgment. Reviewing the pleadings, depositions, answers to interrogatories, and admissions on file, we find there is no genuine issue as to material fact and that Audubon is entitled to judgment as a matter of law. The watercraft exclusion in the Audubon CGL policy unambiguously denies coverage for the alleged injuries sustained by the Henry plaintiffs in the main demand. We find that the dock barge, moored in place in the Mississippi River and surrounded by water, was afloat and not "ashore" on premises owned or rented by the insured. Thus, the exception to the watercraft exclusion, urged by So. La. Sugars, is not applicable here. Accordingly, the judgment granting summary judgment on the issue of coverage is reversed.
REVERSED AND RENDERED.
NOTES
[1] The Audubon CGL policy, attached as an exhibit to Audubon's motion for summary judgment, shows that the policy provided personal injury coverage of $1,000,000 per occurrence with no deductible. R. Vol. 1, p. 175.
[2] The Westport P & I policy, attached as an exhibit to Audubon's motion for summary judgment, shows that the policy provided personal injury coverage of $250,000 per occurrence with a $5000 deductible. R. Vol. 1, p. 201-202.
[3] Plaintiffs in the main demand amended and supplemented their petition to add both Audubon and Westport as named defendants. R. Vol. 2, p. 347-350.
[4] In fact, the dock barge was the only vessel named in the Westport policy.
[5] Henry v. South Louisiana Sugars Co-op., Inc., 2006-71 (La.App. 5 Cir. 9/26/06), 940 So.2d 688.
[6] Henry v. South Louisiana Sugars Co-op., Inc., 2006-2764 (La.2/2/07), 948 So.2d 183.
[7] So. La. Sugars admitted the barge was constructed as a watercraft subject to the clarification that it was being used as a dock. R. Vol. 2, p. 265.
[8] Although the word "shore" is defined in Black's Law Dictionary, that definition does not aid our determination in this case.
[9] Although the parties cite to cases from various jurisdictions, the reasoning and holdings in those cases are not persuasive authority, as we find their factual circumstances to be unlike the issue presented here.
[10] According to So. La. Sugars, the American Heritage Dictionary of the English Language, (New College Edition 1981) defines "ashore" as "toward or on the shore." In addition, So. La. Sugars relies on the Cambridge Dictionary of American English, (2000) for its definition of "ashore" as "toward or onto land from an area of water, or on land after coming from an area of water."
[11] Audubon argues the American Heritage Dictionary (4th ed.2000) defines "ashore" to mean "on land." Audubon also cites to several nautical dictionaries which similarly define "ashore."
[12] Under So. La. Sugars' alternative definition, a vessel at sea, on its way back to a port and heading "toward the shore" could be considered "ashore." We find this alternative interpretation, that a watercraft fully afloat, even next to the shore, could be the same as "ashore" to be nonsensical under the facts of this case. An insurance policy should not be interpreted in an unreasonable or strained manner so as to achieve an absurd conclusion. Carrier, 99-2573 p. 11-12, 759 So.2d at 43.
[13] Our holding in this case expresses no opinion as to whether the exception to the watercraft exclusion would apply to a watercraft partially on land and partially in the water.
[14] La. C.C. art. 450 provides, in pertinent part, as follows:

Public things are owned by the state or its political subdivisions in their capacity as public persons.
Public things that belong to the state are such as running waters, the waters and bottoms of natural navigable water bodies, the territorial sea and the seashore. . . .