977 So.2d 1055 (2008)
Michelle Nunez NELSON and Terry Glynn Nelson, Sr., Individually and on Behalf of their Minor Daughter, Terriel Nelson, Terrell Nelson, Mary Nunez and Terrence Nunez
v.
THIBAUT HG CORPORATION d/b/a Higgins Gate Apartments and Discover Specialty Insurance.
No. 2007-CA-0515.
Court of Appeal of Louisiana, Fourth Circuit.
January 23, 2008.
*1056 Richard K. Leefe, Leefe, Gibbs, Sullivan, Dupre' & Aldous, LLC, Metairie, LA, and David R. Fine, Fine & Associates, PLC, New Orleans, LA, for Plaintiffs/Appellants.
Michael J. Remondet, Jr., Scott F. Higgins, Jeansonne & Remondet, Lafayette, LA, for Defendants/Appellees.
(Court composed of Judge DENNIS R. BAGNERIS, SR., Judge TERRI F. LOVE, Judge ROLAND L. BELSOME).
TERRI F. LOVE, Judge.
This appeal arises from the drowning death of a minor in an apartment complex swimming pool. The minor was not a resident of the apartment complex. The owner and insurer of the apartment complex filed a motion for summary judgment asserting that a duty was not breached as fences, postings, and light surrounded the swimming pool and that no duty was owed to the minor as he was trespassing. The trial court granted the motion for summary judgment. We find that no genuine issues of material fact exist and affirm the judgment of the trial court.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY
Terry Nelson, Jr. ("Terry") and some associates entered the Higgins Gate Apartments ("the Complex") on May 15, 2004, allegedly to visit a friend's grandmother and brother at night. Terry decided to get into the Complex's swimming pool and subsequently drowned.
Michelle Nunez Nelson and Terry Nelson, Sr. filed a petition for damages on behalf of themselves, Terry's siblings, and two cousins (collectively "the Plaintiffs") against Thibaut HG Corporation, the owner of the Complex, and Discover Specialty Insurance Company, the owner's insurer (collectively "the Defendants") alleging gross negligence. The Defendants filed an exception of no right of action as to Terry's two cousins asserting that they were not entitled to recovery pursuant to La. C.C. art. 2315.6. After receiving a joint motion to dismiss without prejudice, the trial court dismissed the two cousins.
The Defendants then filed a motion for summary judgment on the basis that the fence, postings, and lights fulfilled their duty and/or that they owed no duty to the *1057 Plaintiffs because Terry was trespassing. The trial court granted the Defendants' motion for summary judgment. This timely devolutive appeal followed.

STANDARD OF REVIEW
The appellate courts review summary judgments using the de novo standard of review. Henry v. S. La, Sugars Co-op., Inc., 06-2764, p. 4 (La.5/22/07), 957 So.2d 1275, 1277. "Thus, this court asks the same questions as does the trial court in determining whether summary judgment is appropriate." Id. "[I]f the pleadings depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is not genuine issue as to material fact," then the "mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(B). The burden of proof remains with the mover. La. C.C.P. art. 966(C)(2). "[I]f the movant will not bear the burden of proof at trial . . . the movant's burden" is "to point out . . . an absence of factual support" for an element essential to the adverse party. La. C.C.P. art. 966(C)(2).

SUMMARY JUDGMENT
The Plaintiffs assert the trial court erred in granting the Defendants' motion for summary judgment because they alleged that the swimming pool-was not properly maintained, the gates were unlocked, and the fence was in disrepair.
The Louisiana Civil Code provides:
[t]he owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.
La. C.C. art. 2317.1. Therefore, the Plaintiffs must prove that 1) the Defendants owned or had custody/care of the swimming pool; 2) the swimming pool was the cause-in-fact of Terry's injuries; and 3) that the Defendants knew or should have known the swimming pool presented an unreasonable risk of harm. Graubarth v. French Mkt. Corp., 07-0416, p. 2 (La.App. 4 Cir. 10/24/07), 970 So.2d 660, 664.
The Defendants do not dispute that they own or have custody/care of the swimming pool. It is also uncontested that the swimming pool was the cause-in-fact of Terry drowning. Thus, our analysis of whether the swimming pool presented an unreasonable risk of harm is determinative.
The duty owed by a landowner to his guests is governed by a reasonableness standard. Socorro v. City of New Orleans, 579 So.2d 931, 942 (La.1991). The test to determine whether a breach of a landowner's duty has occurred is whether, in the management of his property, he has acted as a reasonable man in view of the probability of injury to others. Collins v. Whitaker, 29,324, p. 4 (La.App. 2 Cir. 4/2/97), 691 So.2d 820, 823. A "landowner is not liable for an injury sustained which results from a condition which should have been observed by the individual in the exercise of reasonable care or which was as obvious to a visitor as it was to the landowner." Annis v. Shapiro, 517 So.2d 1237, 1238-39 (La.App. 4th Cir.1987). In regards to a swimming pool, "[t]he danger presented, the risk of drowning, is an open and obvious one." Id. at p. 3, 691 So.2d at 823.
The Defendants provided the affidavit of Michael Frenzel ("Mr. Frenzel"), a certified safety professional, who inspected the Complex's swimming pool area. He stated *1058 that a metal picket fence over four feet tall and backed by wooden posts enclosed the swimming pool on three sides with the remaining side enclosed by a building. Additionally, he attested that two gates secure the fence, while chicken wire also surrounds the swimming pool for additional protection. Mr. Frenzel specified that numbers alongside the swimming pool indicate the water depth. Finally, it was his opinion that "there were no defects in the pool or its enclosure that caused or contributed" to Terry's death.
Homicide Detective, Ronald Ruiz ("Detective Ruiz"), was the first officer to respond to the report of Terry's drowning. He stated that, upon arrival, "the fence to the pool was completely secure, including chains and padlocks on both entrances to the pool area." Detective Ruiz noticed "exterior lighting around the pool area, locked doors from the building to the pool, and a secure gate around the pool." He further noted depth indicators and signs reading, "Pool for Residents Only, No Trespassing" and "No Diving, Swim at Your-Own Risk."
The manager of the Complex, Kim Van Cott ("Ms. Cott"), stated that the swimming pool was not open. However, she observed depth indicators, a secure fence, lighting, and postings around the swimming pool area.
The Plaintiffs' affidavits contend that: (1) the gates were not secure; (2) tiles were loose and broken; (3) scant lighting illuminated the swimming pool area; and (4) the swimming pool was full of green slime and algae. The affidavits submitted by Defendants document that the gates were secure and the swimming pool area was illuminated. As to allegedly broken tiles and green algae, we find that these are conditions that a reasonable person would have in a swimming pool that was closed as was the swimming pool at the Complex.
Given the evidence contained in the affidavits submitted by the Defendants, we do not find that the Complex's swimming pool was maintained in an unreasonable manner. Therefore, it did not present an unreasonable risk of harm. Detective Ruiz as well as the other two affiants attested to the secure nature of the fence, the water depth indicators, postings, and lighting. Detective Ruiz stated that "[e]mergency personnel were forced to cut the locks on the fence in order to obtain access to the pool area." The reasonable man would include these measures to protect people on his land from harm. The obvious risk of drowning was apparent. Thus, we find that no genuine issues of material fact exist as the Defendants did not breach a duty to the Plaintiffs.

DECREE
For the reasons mentioned above, we find that no genuine issues of material fact exist and affirm the judgment of the trial court.
AFFIRMED.
BELSOME, J., concurs with reasons.
BELSOME, J., concurs with reasons.
I write separately to address in more detail the summary judgment standard as it relates to the statements contained in the affidavits. In this case, Homicide Detective Ronald Ruiz stated in his affidavit that as the first officer to arrive as the decedent was being removed from the pool, he observed that "the fende to the pool was completely secure, including chains and padlocks on both entrances to the pool area." Detective Ruiz further stated that emergency personnel were forced to cut the locks on the fence in order to access the area and treat the *1059 decedent. As the majority notes, Detective Ruiz's sworn statement also included his observations that there was exterior lighting around the pool area; that the doors from the adjacent building to the pool were locked; that there were signs in the pool area which read "Pool for Residents Only, No Trespassing", "No Diving, Swim at Your Own Risk"; and that there was a secure gate around the pool.
Similarly, Kim Van Cott, the manager of the apartment complex for ten years, stated in her affidavit that as of 5:00 p.m. on May 15, 2004, the date of the incident, no sections of the fence surrounding the pool were missing. Ms. Cott's sworn statement corroborated Detective Ruiz's observations that on the date in question, the pool was fenced securely, locked with chains and padlocks, and posted with the aforementioned signs. Finally, as the majority notes, the pool was not open even to residents until Memorial Day weekend.
Appellants submitted affidavits from Michael Carter, a seventeen year old friend of the decedent, and from Mary Nunez, the aunt of the decedent. Michael Carter's affidavit contained statements with regard to conditions of the pool area in the past. Without specifying a date, the affidavit also contained statements that a hole in one of the gates securing the pool area was covered with chicken wire, and that the wire had been cut. Michael Carter further stated in his affidavit that several people went through the hole in the gate, but did not state on which date he made this observation.
Mary Nunez, who did not submit that she was a resident of the apartment complex, stated in her affidavit that "[o]n May 15, 2004, she went to the Higgins Gate Apartments and saw Terry Nelson and the status of the swimming pool." Significantly, Ms. Nunez did not specify at what time on May 15, 2004 she was in the pool area of the apartment complex, nor did she state whether she saw the decedent before or after the incident. Ms. Nunez further stated that "[t]here were two gates to the pool at the Higgins Gate on May 15, 2004, one was chained and one gate had no lock, chains or pad lock on the gate." As previously noted, Detective Ruiz's sworn statement indicated that emergency services personnel were forced to cut the locks in order to access the pool area.
It is well-settled that with respect to summary judgments, a fact is considered material "if it is essential to plaintiffs cause of action under the applicable theory of recovery and if without the establishment of the fact by a preponderance of the evidence, plaintiff could not prevail." Grant v. American Sugar Refining, Inc., XXXX-XXXX, p. 5 (La.App. 4 Cir.1/31/07), 952 So.2d 746, 748-49. "Material facts are those that potentially insure or preclude recovery, affect the litigant's ultimate success, or determine the outcome of a legal dispute." Id. at 749 (citing Prado v. Sloman Neptun Schiffahrts, A.G., 611 So.2d 691, 699 (La.App. 4 Cir.1992).
Assuming Appellees owed a duty to the decedent, who was neither a resident nor a guest at the time of the incident, a material fact in this case is whether the pool area presented an unreasonable risk of harm. Considering all of the affidavits, Appellants have not demonstrated the existence of a material fact as to whether the pool area was secure immediately prior to the incident. Moreover, this Court has held that "when a dangerous condition is patently obvious and easily avoidable, it can hardly be considered to present a condition creating an unreasonable risk of harm." Annis v. Shapiro, 517 So.2d 1237, 1239 (La.App. 4 Cir.1987) (finding that homeowners were not liable for injuries sustained by swimming pool repairer when he slipped on inside of drained swimming *1060 pool, which had slick surface due to the accumulation of leaves, algae, and slime).
The death of such a young person is a tragedy in any event. The Appellants' affidavits, however, fail to identify a time frame and do not demonstrate factual support sufficient to establish that they would be able to satisfy their evidentiary burden of proof at trial. See La.C.C.P. art. 966(C); Grant v. American Sugar Refining, Inc., supra Accordingly, I respectfully concur in the result.