TERRI F. LOVE, Judge.
|! This appeal arises from damages the plaintiff allegedly suffered as a result of taking Clozaril. The manufacturer of Clo-zaril filed a motion for summary judgment seeking to dismiss the plaintiffs claims regarding the alleged failure to provide an adequate warning. The trial court granted the motion and denied a motion for reconsideration or new trial. We do not find that the trial court erred, as the plaintiff will be unable to meet his burden of proof at trial. Therefore, no genuine issues of material fact exist and we affirm.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Wayland Ezeb, who was in the care, custody, and control of the State of Louisiana’s Department of Social Services, Department of Health and Hospital’s Office of Community Services, was being treated by Dr. Patrick Dowling at Coliseum Medical Center (“CMC”), in 1990, for treatment of schizophrenia. In October 1990, Dr. Dowling began administering the anti-psychotic drug Clozaril to Mr. Ezeb, after CMC obtained permission from the State of Louisiana.
During the first few weeks of Clozaril treatment, Mr. Ezeb suffered from two suspected seizures and was taken to Touro Infirmary (“Touro”). Following this, Dr. Dowling temporarily discontinued Clozaril. However, Dr. Dowling began ^prescribing Clozaril again in November because other medications were not helping Mr. Ezeb. In *168 December 1990, Mr. Ezeb suffered from another suspected seizure and was taken to Touro Hospital. Mr. Ezeb alleges that he suffered from hypotensive and focal seizures as a result of taking Clozaril, which ultimately resulted in an alleged diagnosis of neuroleptic malignant syndrome (“NMS”).
Mr. Ezeb filed a petition for damages, in 1992, against his treating physicians,[1] the medical centers, and Clozaril’s manufacturer, Sandoz Pharmaceuticals Corporation[2] (“Novartis”), seeking damages. Novartis filed a motion for summary judgment, which the trial court granted, dismissing all of Mr. Ezeb’s claims against Novartis that did not arise under the Louisiana Products Liability Act. Following several years of stayed litigation due to the insolvency of Dr. Dowling’s insurance provider, Novartis filed a second motion for summary judgment seeking to dismiss Mr. Ezeb’s claims regarding a failure to provide an adequate warning. The trial court granted Novartis’ motion for summary judgment and dismissed Mr. Ezeb’s claims with prejudice approximately two months prior to trial. Mr. Ezeb then filed a motion for reconsideration and reversal of judgment or for a new trial, which the trial court denied. The trial court stated that Dr. Dowling was aware of the side effects of Clozaril and that “[e]ven if the plaintiff can prove that the lack of an adequate warning or instruction rendered Clozaril unreasonable dangerous, Dr. Dowling’s testimony establishes that an adequate warning or instruction would have been futile....”
|sMr. Ezeb filed a motion for devolutive appeal from the judgment denying reconsideration or a new trial. When a party appeals a judgment on a motion for new trial, but intends to appeal the merits, this Court should consider the appeal as one on the merits. Smith v. Hartford Accident and Indem. Co., 254 La. 341, 348-49, 223 So.2d 826, 828-29 (1969); Carpenter v. Hannan, 01-0467, p. 4 (La.App. 4 Cir. 3/28/02), 818 So.2d 226, 228-29. “[A]p-peals are favored in law and will not be dismissed upon mere technicalities.” McCann v. Todd, 201 La. 953, 10 So.2d 769, 771 (1942). Mr. Ezeb’s brief seeks to appeal the judgment granting Novartis’ motion for summary judgment and this appeal will be considered accordingly.

STANDARD OF REVIEW

The summary judgment procedure is “favored and shall be construed to accomplish these ends.” La. C.C.P. art. 966(A)(2). Appellate courts review summary judgments using the de novo standard of review utilizing the same criteria as the trial courts to discern whether summary judgment is appropriate. Mooring Fin. Plan 401(K) Profit Sharing Plan v. Ninth Ward Hous. Corp., 09-0327, p. 2 (La.App. 4 Cir. 9/16/09), 18 So.3d 797, 798. Summary judgment is appropriate “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there *169 is no genuine issue of material fact, and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B). The trial court should not make credibility determinations on a motion for summary judgment. Grant v. Am. Sugar Ref., Inc., 06-1180, p. 3 (La.App. 4 Cir. 1/31/07), 952 So.2d 746, 748.
“The burden of proof remains with the movant.” La. C.C.P. art. 966(C)(2). If the mover -will not bear the burden of proof at trial, then the mover must “point out to the court that there is an absence of factual support for one or more elements Ressential to the adverse party’s claim, action, or defense.” La. C.C.P. art. 966(C)(2). The burden then shifts to the adverse party to “produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial.” La. C.C.P. art. 966(C)(2). If the adverse party does so, no genuine issue of material fact exists. La. C.C.P. art. 966(C)(2).
“A fact is material if it is essential to plaintiffs cause of action under the applicable theory of recovery and if without the establishment of the fact by a preponderance of the evidence, plaintiff could not prevail.” Grant, 06-1180, p. 4, 952 So.2d at 748-49. “Generally, material facts are those that potentially insure or preclude recovery, affect the litigant’s ultimate success, or determine the outcome of a legal dispute.” Prado v. Sloman Neptun Schiffahrts, A.G., 611 So.2d 691, 699 (La.App. 4th Cir.1992).

FAILURE TO WARN

Mr. Ezeb contends that the trial court erred in granting Novartis’ second motion for summary judgment, dismissing his claims for failure to provide an adequate warning about the possible side effects of Clozaril pursuant to the Louisiana Products Liability Act (“LPLA”). Mr. Ezeb asserts that the description Novartis provided of NMS was unclear and ambiguous, that the alleged inadequate warning on NMS was the proximate cause of Mr. Ezeb’s injuries, and that alleged verbal representations made by Novartis superseded the written warnings.
Novartis is liable to Mr. Ezeb if the damages alleged were “proximately caused by a characteristic of the product that renders the product unreasonably dangerous” and “when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity.” La. R.S. 9:2800.54(A). A product can be unreasonably dangerous “because an adequate warning about the ^product has not been provided as provided in R.S. 9:2800.57.” La. R.S. 9:2800.54(B)(3). Louisiana defines an adequate warning as one that
would lead an ordinary reasonable user or handler of a product to contemplate the danger in using or handling the product and either to decline to use or handle the product or, if possible, to use or handle the product in such a manner as to avoid the damage for which the claim is made.
La. R.S. 9:2800.53(9).
Mr. Ezeb must establish that the product that left the manufacturer’s control “possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product.’ ” Jack v. Alberto-Culver USA, Inc., 06-1883, pp. 4-5 (La.2/22/07), 949 So.2d 1256, 1258, quoting La. R.S. 9:2800.57. “[Tjhere must be some reasonable connection between the omission by the manufacturer and the damage, which the plaintiff has suffered.” Boutte v. Kelly, 02-2451, p. 18 (La.App. 4 Cir. 9/17/03), 863 So.2d 530, 545. “Although a product is not defective, a manu *170 facturer still has the duty to instruct reasonably foreseeable users of its product with regard to its safe use.” Id.
The learned intermediate doctrine states that “the drug manufacturer has no duty to warn the customer directly” and that the “manufacturer’s duty is fulfilled when the prescribing or treating physician is informed of the risks from the drug use.” Kampmann v. Mason, 05-423, p. 4 (La.App. 5 Cir. 1/17/06), 921 So.2d 1093, 1094. “It is then the physician’s responsibility to advise the patient.” Id. However, there is a two-prong test in failure to warn LPLA claims. Stahl v. Novartis Pharm. Corp., 283 F.3d 254, 265 (5th Cir.2002); Kampmann, 05-423, p. 3, 921 So.2d at 1094. “First, the plaintiff must show that the defendant failed to | fiwarn (or inadequately warned) the physician of a risk associated with the product that was not otherwise known to the physician.” Id. at 265-66. “Second, the plaintiff must show that this failure to warn the physician was both a cause in fact and the proximate cause of the plaintiffs injury.” Id. at 266; see also George v. Hous. Auth. of New Orleans, 04-2167 (La.App. 4 Cir. 6/29/05), 906 So.2d 1282.
Novartis included information on NMS in the Clozaril materials, which stated the following:
Neuroleptic Malignant Syndrome
A potentially fatal symptom complex sometimes referred to as Neuroleptic Malignant Syndrome, NMS, has been reported in association with antipsychotic drugs. Clinical manifestations of NMS are hyperpyrexia, muscle rigidity, altered mental status and evidence of autonomic instability (irregular pulse or blood pressure, tachycardia, diaphores-es, and cardiac dysrhythmias).
The diagnostic evaluation of patients with this syndrome is complicated. In arriving at a diagnosis, it is important to identify cases where the clinical presentation includes both serious medical illnesses (e.g., pneumonia, systemic infection, etc.) and untreated or inadequately treated extrapyramidal signs and symptoms (EPS). Other important considerations in the differential diagnosis include central anticholinergic toxicity, heat stroke, drug fever and central nervous system (CNS) pathology.
The management of NMS should include 1) immediate discontinuation of antipsychotic drugs and other drugs not essential to concurrent therapy, 2) intensive symptomatic treatment and medical monitoring, and 3) treatment of any concomitant serious medical problems for which specific treatments are available. There is no general agreement about specific pharmacological treatment regimens for uncomplicated NMS.
If a patient requires antipsychotic drug treatment after recovery from NMS, the potential reintroduction of drug therapy should be carefully considered. The patient should be carefully monitored since recurrences of NMS have been reported.
No cases of NMS have been attributed to Clozaril alone. However, there have been several reported cases of NMS in patients treated concomitantly with lithium or other CNS-active agents.
|7Mr. Ezeb contends that the definition of NMS should have been “more complete and accurate” because he claims the definition used was “extremely narrow.”
Novartis bore the original burden to demonstrate an absence of factual support for one or more elements essential to Mr. Ezeb’s claim. La. C.C.P. art. 966(C)(2). Novartis attached an excerpt of Dr. Dowl-ing’s deposition from 2006, to its motion for summary judgment, in which Dr. Dowl-ing stated that the information provided with Clozaril was “very, very complete.” *171 Dr. Dowling also stated that NMS had occurred with every medicine that” he used. Further, Dr. Dowling testified in his deposition that, due to Mr. Ezeb’s potentially fatal illness, he would have prescribed Clozaril even if the warnings included irreversible brain damage because “the risk of one of these side effects occurring was infinitely lower than the risk of his getting killed or killing himself with the illness that he had.” When considering the proposed NMS warning contained in the affidavit of Dr. Thomas Brown, attached to Mr. Ezeb’s opposition to the motion for summary judgment, Dr. Dowl-ing stated that the proposed warning would not have caused him to do anything differently in regards to Mr. Ezeb’s treatment. Dr. Dowling testified that the proposed warning would not have changed his treatment of Mr. Ezeb before, during, or after he began prescribing Clozaril.
In opposition, Mr. Ezeb attached Dr. Dowling’s 1998 deposition, medical records, Clozaril prescribing information, and an affidavit from Dr. Brown. In his 1993 deposition, Dr. Dowling stated that he knew death and agranulocytosis was a Clo-zaril risk, but that he did not know that what happened to Mr. Ezeb was a “danger.” He further stated that he did not think “anyone knew at the time that this could happen.” After Mr. Ezeb first hit his head, Kathleen Gaudet, a Novartis 1 Representative, allegedly told him that it was “highly unlikely” that Mr. Ezeb’s symptoms were caused by Clozaril. Dr. Dowling stated that Dr. Michael Krassner, a doctor from Novartis, allegedly said that “nothing like this has happened” and that “nothing like this has ever happened.” However, Dr. Dowling stated that even if Dr. Krassner said Mr. Ezeb’s symptoms were caused by Clozaril, it would have made no difference in his treatment. Further, Dr. Dowling attested that his treatment of Mr. Ezeb would not have changed even if the Novartis warning contained additional treatment options of NMS. Finally, Dr. Dowling stated that “standard medical care” was not working with Mr. Ezeb and that was why he prescribed Clo-zaril.
Dr. Brown’s affidavit described the late 1980’s NMS diagnostic criteria as follows:
Must have [1] and [2], and 8 of [3] through [9]:
[1] elevated temperature
[2] EPS (Extrapyramidal Symptoms, by which is meant a variety of involuntary abnormalities of muscle movement and tone, including tremors, rigidity, and many other findings).
[3] tachycardia
[4] elevated blood pressure
[5] leukocytosis (elevated white blood cell count)
[6] incontinence
[7] diaphoresis
[8] confusion
[9] elevated creatinine kinase
[10] all above occurs together within a 48-hour period.
Dr. Brown stated that Mr. Ezeb acquired NMS after taking Clozaril in 1990. Dr. Brown characterized Novartis’ warning regarding NMS as “unduly narrow” and stated that the list of symptoms was “a misleading and incomplete list.” Lastly, Dr. Brown stated that Dr. Krassner “actively diverted” Dr. Dowling from correctly diagnosing Mr. Ezeb when Dr. Krassner allegedly stated that Mr. Ezeb’s | cisymptoms were not caused by Clozaril. Dr. Brown was prohibited from testifying as an expert at trial, but, as noted in Mr. Ezeb’s opposition to Novartis’ motion for summary judgment, Dr. Brown’s deposition for purposes of perpetuation was noticed. Mr. Ezeb contended that he was “actively pursuing an expert to testify.” *172 However, after over a decade of litigation, Mr. Ezeb has no expert willing to testify at trial that Novartis’ NMS warning was inadequate or that the alleged inadequate warning was the cause of Mr. Ezeb’s symptoms.
Novartis demonstrates Mr. Ezeb’s lack of evidence regarding the alleged inadequacy of Clozaril’s warning by failing to provide any information regarding testimony to be adduced at trial. Additionally, Novartis presented the deposition testimony of Dr. Dowling, in which he states that a different, more elaborate warning would not have changed his course of treatment. In opposition, Mr. Ezeb presented the affidavit of Dr. Brown. Dr. Brown alleged that the Clozaril warning provided by Novartis was inadequate. However, as stated above, Dr. Brown will not testify at trial. Further, after over a decade of litigation, Mr. Ezeb did not present factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. Essentially, Mr. Ezeb failed to present evidence that the warning was inadequate or that the alleged inadequate warning was the cause-in-fact or proximate cause of Mr. Ezeb’s alleged injuries.
Mr. Ezeb alleges that an issue of fact exists as to whether the alleged verbal representations supersede Novartis’ written warning. Mr. Ezeb presented no factual evidence or support that Dr. Dowl-ing’s treatment would have changed if Dr. Krassner’s information was different. In fact, Dr. Dowling’s deposition testimony reflects that his treatment decisions would not change if Dr. Krassner told him that Mr. Ezeb’s symptoms were caused by Clo-zaril. Additionally, this |inassertion again lacks evidence as to a causal relationship between the alleged verbal representations, Dr. Dowling prescribing Clozaril, and Mr. Ezeb’s alleged NMS.
Accordingly, given Mr. Ezeb’s lack of factual support that he will be able to satisfy his evidentiary burden of proof at trial, we do not find that the trial court erred in granting Novartis’ motion for summary judgment and affirm.

DECREE

For the above mentioned reasons, we find that the trial court properly granted Novartis’ motion for summary judgment and affirm.
AFFIRMED.
BELSOME, J., dissents with reasons.

. The named defendants included: Dr. Patrick Dowling, Dr. Robert Miles, Dr. G.B. Ruf-fin, Dr. Greg Feniss, Sandoz Pharmaceuticals Corporation, the State of Louisiana, CPC Coliseum Medical Center, Touro Infirmary, Children's Hospital, and Caremark Homecare. Mr. Ezeb also included any other unnamed doctors or medical facilities that participated in his treatment. Mr. Ezeb’s fifth supplemental and amended petition also added Transatlantic Reinsurance Company as a defendant. The procedural history regarding Novartis is recanted, as the judgment granting Novartis' second motion for summary judgment is the subject of the present appeal.

. Novartis Pharmaceuticals Corporation is the successor-in-interest, by merger, to San-doz Pharmaceuticals Corporation.